T.C. Memo. 2010-129

UNITED STATES TAX COURT

STEVE LACY LOWE AND JANICE MARIE LOWE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16304-08.                    Filed June 14, 2010.

        R determined tax deficiencies and accuracy-related
penalties pursuant to sec. 6662(a), I.R.C., for Ps'
2005 and 2006 tax years.  Ps and R dispute whether Ps
are entitled to business expense deductions in excess
of gross income from their bass fishing contest
activity.

        <u>Held</u>:  Ps are not entitled to the excess business
expense deductions but are not liable for the sec.
6662(a), I.R.C., accuracy-related penalties for 2005
and 2006.

Steve Lacy Lowe and Janice Marie Lowe, pro sese.

<u>Halvor R. Melom</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition
for redetermination of alleged Federal income tax deficiencies
that respondent determined for petitioners' 2005 and 2006 tax
years.  Respondent issued petitioners a notice of deficiency on
April 4, 2008.  Petitioners then filed a timely petition with
this Court on July 2, 2008.  A trial was held on June 29, 2009,
in Los Angeles, California.

Respondent concedes that petitioners substantiated all of
their claimed income and expenses for the years at issue.  The
issue for decision is whether petitioners are entitled to
deductions claimed on their Schedule C, Profit or Loss From
Business, to the extent they exceed their gross income from those
activities.  More specifically, the issue is whether petitioner
husband (Mr. Lowe) was engaged in his bass fishing activity for
profit.  See sec. 183.[1]

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated
facts and the accompanying exhibits are hereby incorporated by
reference into our findings.  Petitioners were married and filed
joint Forms 1040, U.S. Individual Income Tax Return, for 2005 and

---

[1]Except as otherwise indicated, all section references are
to the Internal Revenue Code of 1986, as amended and in effect
for the tax years at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

2006.  Petitioners resided in California when they filed their petition.

During the years at issue petitioner wife (Mrs. Lowe) worked full time as a "controller" for Fry Steel Co., where she has worked for over 38 years.  She earned $177,219 and $184,181 in 2005 and 2006, respectively, with an additional $12,000 per year for taking notes at the board of directors meetings.

From 1986 to 1999 Mr. Lowe's only occupation was improving petitioners' home, for which he received no income.  Mr. Lowe has fished for as long as he can remember, fishing only recreationally before 1999.  Mr. Lowe became interested in tournament fishing in 1999 when he attended a fishing tournament with a first-place prize of $6,000.

In 2005 Mr. Lowe fished in 26 tournaments run by either American Bass, FLW Strem Series, or Western Outdoor News (WON) and reported gross income on petitioners' Schedule C of $4,241.  In 2006 Mr. Lowe fished in 15 tournaments run by those same organizations and reported $10,932 of gross income.  The entry fees ranged from $280 to $825 with an additional $325 for a "co-angler" amateur in FLW events.  When entering American Bass or WON tournament team events, Mr. Lowe would list his wife as his co-angler teammate and pay her entry fee, although she would not actually compete.  In these events Mr. Lowe would single-handedly take on the rest of the competitors, most or all of whom

presumably took advantage of the rules to compete as two-member teams. To win or place, Mr. Lowe had to catch more fish with one hook and line than his competition could catch with two hooks and lines. The first-place prizes ranged from $4,000 up to $50,000 and, in some instances, a boat valued by petitioners at $25,000, depending on the tournament. If a competitor won sufficient points, during the year that competitor might qualify for a yearend national fish-off tournament where first place would pay $250,000.

Mr. Lowe was diagnosed with cancer on October 31, 2006, and underwent chemotherapy from December 2006 through February 2007. He did not participate in any fishing tournaments in 2007.

Petitioners have a voluminous library of magazines, newspapers, books, and videotapes on bass fishing. Mr. Lowe reads about and studies fishing 2 or 3 hours a night. Mr. Lowe was a regular card-carrying member of American Bass-Professional Bass Tournament Angler, FLW Outdoors, and US Anglers Choice in earlier and/or later years and may, although the record is unclear, have also been a member of these organizations in 2005 and 2006.

Mr. Lowe consulted friends, including Aaron Martens, about making money in sports fishing and becoming successful in this business. One important aspect of making a profit in the competitive sport fishing business is obtaining commercial

sponsorships to supplement winnings or reduce expenses. Towards the end of 2006 Mr. Lowe consulted Kevin VanDam, a "leading money winner in the bass fishing industry", and Denny Brauer, one of the "largest money [winners] in the business", on how to make his business more profitable. Mr. Lowe was told that the best way to hook and land a sponsor was to win a major tournament.

Mrs. Lowe, a professional bookkeeper, assisted Mr. Lowe in his recordkeeping. Mr. Lowe did not keep a separate bank account for the activity, and he has no other source of earned income. Mr. Lowe has several sponsors and receives $200 worth of lures each year from his sponsors.

On their 2003 through 2006 Schedules C, Mr. Lowe listed his principal business or profession as "PROFESSIONAL FISHING". From 2003 to 2006 petitioners reported on their Federal income tax returns the following amounts of Mrs. Lowe's salary income, gross income from the fishing activity, expenses from the fishing activity, net profit or (loss) from the fishing activity, and taxable income.

| Year | Mrs. Lowe's Salary Income | Gross Income From Fishing Activity | Expenses From Fishing Activity | Net Profit or (Loss) From Fishing Activity | Taxable Income |
|------|---------|---------|---------|---------|---------|
| 2003 | $166,366 | $420 | $33,007 | ($32,587) | $100,936 |
| 2004 | 168,966 | 2,550 | 34,865 | (32,315) | 103,713 |
| 2005 | 177,219 | 4,241 | 49,067 | (44,826) | 63,114 |
| 2006 | 184,181 | 10,932 | 48,608 | (37,676) | 146,484 |

OPINION

I. <u>Mr. Lowe's Profit Objective</u>

Respondent contends that the losses related to Mr. Lowe's fishing activity were not deductible because the fishing activity was not engaged in for profit within the meaning of section 183. Section 183(a) generally disallows deductions attributable to activities not engaged in for profit. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent stipulation to the contrary, has held that an activity is engaged in for profit if the taxpayer's "predominant, primary or principal objective" in engaging in the activity was to realize an economic profit independent of tax savings. <u>Wolf v. Commissioner</u>, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in evaluating a taxpayer's profit objective: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate

in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

None of these factors is determinative in the evaluation of profit objective, nor is the number of these factors for or against the taxpayer necessarily conclusive in that respect. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. All facts and circumstances with respect to the activity must be taken into account. Sec. 1.183-2(b), Income Tax Regs.

1. The Manner in Which the Taxpayer Carries on the Activity

The fact that the taxpayer carries on the activity in a businesslike manner may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Three common inquiries are considered in this context: (1) Whether the taxpayer maintained complete and accurate books and records for the activity; (2) whether the taxpayer conducted the activity in a manner substantially similar to those of other comparable activities that were profitable; and (3) whether the taxpayer changed operating procedures, adopted new techniques, or

abandoned unprofitable methods in a manner consistent with an intent to improve profitability. Giles v. Commissioner, T.C. Memo. 2005-28; sec. 1.183-2(b)(1), Income Tax Regs.

The first subfactor considers whether Mr. Lowe maintained complete and accurate books and records of the activity. Mr. Lowe retained the receipts from expenses related to the fishing activity and then transcribed those expenses into a handwritten ledger organized by expense category. No similar documents concerning the income from the activity were introduced into evidence. When Mr. Lowe was asked whether he maintained records of his income, he explained: "Yes, * * * but it must have been misplaced in the hurry to get everything and my evidence together."

At trial Mr. Lowe explained that Mrs. Lowe is a professional bookkeeper and that she assisted Mr. Lowe in his recordkeeping. However, there is little evidence that the minimal books and records that were kept, were kept for the purpose of "cutting expenses, increasing profits, and evaluating the overall performance of the operation." See Golanty v. Commissioner, supra at 430. Petitioners stipulated that they "prepared no records, reports, forecasts, schedules, analyses, or other documents for" the activity. Mr. Lowe did not maintain a separate bank account for the activity, nor is there any mention in the record of a business plan. While petitioners kept a

written ledger of the expenses of the activity, they did not "prepare any business or profit plans, profit or loss statements, balance sheets, or financial break-even analyses" for the activity. See Dodge v. Commissioner, T.C. Memo. 1998-89, affd. without published opinion 188 F.3d 507 (6th Cir. 1999). We conclude this subfactor is neutral.

As to the second subfactor, Mr. Lowe opined that he carries on his fishing activity "in the same manner as all the other professionals in the United States." There is no evidence in the record to corroborate that Mr. Lowe had been successful in other business activities or that he carried on the fishing activity in a manner substantially similar to activities of the same nature that were profitable. This subfactor favors respondent.

The third subfactor asks whether petitioners changed operating procedures, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability. Mr. Lowe "Looked back over the years and seen [sic] that the profit margin is much more better [sic] for the larger tournaments"; he explained he is "presently only fishing in tournaments that exceed $25,000, $50,000; $25,000 cash, a $25,000 boat." Mr. Lowe also explained that he was always "acquiring and trying to acquire sponsors and learning" in order to improve his business' profitability. We have previously found that working to acquire corporate sponsorship may indicate

a profit motive.  Sleeper v. Commissioner, T.C. Memo. 1997-367.
Although respondent asserts that Mr. Lowe did not receive money
from any of his sponsors, only discounted tackle, free bait, and
line, the taxpayer in Sleeper was not paid in cash either, but
"allowed to purchase lures at a discount." Id.  By fishing in
higher paying tournaments, talking to expert fishermen, as
discussed below, and working to acquire sponsors, Mr. Lowe
changed operating procedures in a manner that would bring about a
"material change" in the profitability of his activity.  See
Golanty v. Commissioner, supra at 428.  This subfactor favors
petitioners.

Mr. Lowe viewed himself as a professional bass fisherman
carrying on the activity in a manner similar to other fishing
activities carried on for profit and made changes with an intent
to improve profitability.  His recordkeeping system is less than
desirable, and was apparently not used to analyze the financial
aspects of the business and adequately address profitability.  We
conclude that Mr. Lowe carried on the fishing activity in a
manner that was businesslike in some respects but not others.
This factor is neutral.

2. The Expertise of the Taxpayer or His Advisers

"Preparation for the activity by extensive study of its
accepted business, economic, and scientific practices, or
consultation with those who are expert therein, may indicate that

the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices." Sec. 1.183-2(b)(2), Income Tax Regs.

We have no doubt that Mr. Lowe is, and was before undertaking his competitive fishing activities, an accomplished bass fisherman. He has certainly engaged in an extensive study of the sport, as evidenced by his collection of books, magazines, newspapers, and videos, as well as by the fact that he studies 2 to 3 hours a night. None of the titles of the magazines, newspapers, books, or videos suggest that they are specifically intended to address the economics or business of profitably fishing for bass competitively. Nevertheless, since Mr. Lowe sought to win tournaments to improve the profitability of this activity, improving his fishing abilities was tantamount to improving the profitability of his business. Mr. Lowe was a skilled fisherman, winning at least two tournaments in 2005 and three tournaments in 2006.

Mr. Lowe also consulted expert professional fishermen to improve profitability. He testified that towards the end of 2006 he consulted with Denny Brauer and Kevin VanDam for about 45 minutes with each, discussing what he "should do to proceed a little bit further into the business to make myself more profitable." Respondent contends that this advice was received at the end of the last year at issue and therefore it was too

late for Mr. Lowe to act on that advice.  However, his seeking this advice demonstrates that Mr. Lowe intended to continue the activity while making it profitable and tends to show that he viewed this activity as more than a hobby.

Mr. Lowe studied the art of bass fishing; he won tournaments and sought expert advice.  This factor favors petitioners.

### 3. The Time and Effort Expended by the Taxpayer in Carrying on the Activity

> The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit.  A taxpayer's withdrawal from another occupation to devote much of his energies to the activity may also be evidence that the activity is engaged in for profit.  * * *  [Sec. 1.183-2(b)(3), Income Tax Regs.]

Mr. Lowe clearly devotes a substantial amount of time to his fishing activity, possibly up to 60 hours per week.  He notes that the fishing activity is his only job and that he has "no other income."  Respondent concedes that this factor favors petitioners.

### 4. The Expectation That Assets Used in the Activity May Appreciate in Value

"The term 'profit' encompasses appreciation in the value of assets, such as land, used in the activity."  Sec. 1.183-2(b)(4), Income Tax Regs.

At trial Mr. Lowe admitted that none of his equipment, which in fact depreciates, or other assets used in the fishing activity

will increase in value.  This factor weighs in favor of respondent.

   5. The Success of the Taxpayer in Carrying on Other Similar or Dissimilar Activities

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable."  Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioners did not address this factor at trial, and there is no evidence that Mr. or Mrs. Lowe carried on any successful businesses in a manner substantially similar to that of the fishing activity.  This factor favors respondent.

   6. The Taxpayer's History of Income or Losses With Respect to the Activity

   A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status such continued losses, if not explainable, as due to customary business risks or reverses, may be indicative that the activity is not being engaged in for profit. * * * [Sec. 1.183-2(b)(6), Income Tax Regs.]

In the years at issue petitioners claimed $82,502 in losses from an activity that has never been profitable.  Mr. Lowe argues that the years at issue were well within the startup stage of the activity.  Mr. Lowe has been a professional bass fisherman "since 2003", and petitioners have reported income and expenses related

to the fishing activity since 2003. Therefore, if the activity began in 2003, it was only in its third and fourth years of existence during the years at issue. We have previously indicated that 5 years was an acceptable startup period for charter boat fishing activities. See <u>Busbee v. Commissioner</u>, T.C. Memo. 2000-182; <u>Zwicky v. Commissioner</u>, T.C. Memo. 1984-471. While competitive freshwater sport fishing is a different activity, we think a 5-year startup period is not excessive.

Mr. Lowe explained that "the money comes at the end. You reap the benefits when everything falls into place." He does not believe "there's a measuring stick as to how long it takes * * * five, six, seven, 10 years." While we do not agree that the startup period is as open-ended as he contends, it appears that his activity was still in the startup stage. We are concerned that Mr. Lowe has equivocated from time to time as to how much longer he will continue his fishing activity before determining whether to sell or abandon it. He ascribed this inconsistency in his correspondence and statements to respondent to his mental confusion resulting from his cancer treatment. At trial Mr. Lowe observed that his earnings had increased every year until the effects of the cancer forced him to quit. This is substantiated by petitioners' tax returns and helps to demonstrate that the activity was still growing during the startup phase.

Because the fishing activity has never made a profit, but was still in the startup stage during the years at issue, we find this factor neutral.

7. The Amount of Occasional Profits, if Any, From the Activity

"The amount of profits in relation to the amount of losses incurred, and in relation to the amount of the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's intent." Sec. 1.183-2(b)(7), Income Tax Regs. "[A]n opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated." Id.

The fishing activity has yet to reel in any profits; however, Mr. Lowe believed that he could make a substantial amount of money if he won a tournament. If Mr. Lowe's primary or principal objective was to make a profit, it is not necessary for him to show that his primary objective was reasonable. See sec. 1.183-2(a), Income Tax Regs. Mr. Lowe believed that it was "time to reap the harvest" of his prior investment.

The Court has previously found that the mere aspiration and qualification to win large cash prizes does not necessarily mean that the activity was engaged in for profit. See Peacock v. Commissioner, T.C. Memo. 2002-122. The activity must have been

engaged in with the objective to make a profit.  Id.  Mr. Lowe
certainly wanted his fishing activity to earn money; however,
even a hobbyist may not want to lose money on his activity.

We have also previously found that a bass fishing activity
where the winnings were in excess of the tournament entry fees
"offered no basis for concluding that he [the taxpayer] would
ever show a profit from tournament fishing" after also
considering travel costs and the depreciation of the equipment.
Hoy v. Commissioner, T.C. Memo. 1991-575.  Mr. Lowe's winnings
were never close to covering his entry fees, let alone his travel
costs and the depreciation on his equipment.  We find this factor
favors respondent.

8. The Financial Status of the Taxpayer

"Substantial income from sources other than the activity
(particularly if the losses from the activity generate
substantial tax benefits) may indicate that the activity is not
engaged in for profit especially if there are personal or
recreational elements involved."  Sec. 1.183-2(b)(8), Income Tax
Regs.

Mrs. Lowe earned substantial income from her job at Fry
Steel Co., and the losses from Mr. Lowe's fishing activity
resulted in substantial tax benefits.  During the years at issue
Mrs. Lowe earned an average of about $180,000 a year from her
job, and petitioners were able to deduct an average of about

$41,000 per year on their joint Federal income tax returns due to Mr. Lowe's fishing activity losses.  Mr. Lowe was not employed before the fishing activity and was able to pursue this activity because of Mrs. Lowe's substantial income.  We also note that Mr. Lowe fished for recreation and pleasure long before commencing his competitive bass fishing activity.  He clearly enjoyed that activity and likely would have incurred significant fishing costs yearly for personal pleasure had he not conducted his claimed business activity.  We find this factor favors respondent.

9. Elements of Personal Pleasure or Recreation

"The presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved."  Sec. 1.183-2(b)(9), Income Tax Regs. However, "We also note that a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility."  Jackson v. Commissioner, 59 T.C. 312, 317 (1972).

Mr. Lowe testified that fishing used to be fun when he was fishing recreationally, but "Fishing in 2005, 2006, 2007, 2008, 2009 is not fun."  Mr. Lowe's fishing activity contained elements of personal pleasure and recreation, but we find Mr. Lowe's testimony that the activity no longer was pleasurable during the years at issue credible.  This factor is neutral.

10.  Supplementary Element of Competitive Efforts for Profit

Additionally we find that Mr. Lowe's competitive strategy was not fully consistent with an intent to make a profit.  As we noted above, none of the factors set out in section 1.183-2(b), Income Tax Regs., is necessarily determinative in the evaluation of profit objective, and all facts and circumstances with respect to the activity must be taken into account.  Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs.

All of the American Bass tournaments in which Mr. Lowe fished were team tournaments.  Mr. Lowe would enter Mrs. Lowe as his partner and then fish the tournaments alone.  This practice, while allowing him to share the activity with his spouse, doubled Mr. Lowe's entry fee.  We assume that had he fished with a fishing partner, the partner would have paid his or her own share of the entry fee.  By fishing alone, Mr. Lowe also at least halved and most likely much more than halved his chances of winning.  Mr. Lowe, against very stiff competition, would have had to catch more fish, alone, than any of his competitors could catch with both competitors fishing, in order to win a tournament.  We do not find this conduct consistent with the intent to make a profit.  If Mr. Lowe had been truly engaged in the bass fishing activity for profit, he would have done everything in his power to increase his chances of winning and decrease his entry costs.  We do note that under this strategy,

had Mr. Lowe won, he would not have had to split the prize. Unfortunately, when you do not win, that does not matter. With such a large handicap we believe winning would have been extraordinarily difficult and extremely improbable. We find this factor favors respondent.

After considering all of the above factors as applied to the unique facts and circumstances of this case, we conclude that Mr. Lowe's fishing activity was not engaged in for profit within the meaning of section 183. Therefore petitioners are not entitled to deduct expenses in excess of gross income from the activity.

## II. Section 6662(a) Accuracy-Related Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty of 20 percent of any underpayment that is attributable to causes specified in subsection (b). Respondent asserts that because petitioners did not engage in the fishing activity for profit and were not allowed to deduct expenses exceeding the gross income from the fishing activity, there was a substantial understatement of income tax. Sec. 6662(b)(2). There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of

reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Although we have determined that Mr. Lowe's fishing activity was not engaged in for profit, under the circumstances of this close case we find reasonable cause for the tax underpayment and that petitioners "made a reasonable and good faith error in applying the law to the facts of this case." See Connolly v. Commissioner, T.C. Memo. 1994-218, affd. without published opinion 58 F.3d 637 (5th Cir. 1995). Therefore petitioners are not liable for the section 6662(a) accuracy-related penalties for the years at issue.

The Court has considered all of petitioners' and respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered
under Rule 155.